In the United States District Court
for the Western District of Michigan
Southern Division at Grand Rapids

---

| | |
|---|---|
| Robert Schnotala, | |
| *On behalf of himself and those similarly situated*, | Case No. |
| Plaintiff, | Judge |
| v. | Magistrate Judge |
| Michigan Restaurant Group, Inc., Patrick Gaunce, Wayne Gaunce, Mark Harger, Doe Corporation 1-10; John Doe 1-10, | Jury Demand Endorsed Hereon |
| Defendants. | |

---

Class and Collective Action Complaint

---

## I.  Introduction

1.     Robert Schnotala, on behalf of himself and all similarly situated individuals, brings this action against Defendants Michigan Restaurant Group., Inc., Patrick Gaunce, Wayne Gaunce, Mark Harger, Doe Corporations 1-10, and John Doe 1-10 (collectively, "Michigan Restaurant Group" or "Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA") and M.C.L.A. §408.414, and unjust enrichment.

1

2.      At all relevant times, Defendants operated multiple Papa John's pizza restaurants in the Wyoming, Michigan and Muskegon, Michigan areas (the "Michigan Restaurant Pizza" stores).

3.      Defendants repeatedly and willfully violated the Fair Labor Standards Act and the M.C.L.A. §408.414 by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

4.      All delivery drivers at the Defendants' stores, including Plaintiff, have been subject to the same employment policies and practices, including policies and practices with respect to wages and reimbursement for out-of-pocket expenses.

5.      Plaintiff brings this action on behalf of himself and similarly situated former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

6.      Plaintiff also brings this action on behalf of himself and similarly situated former delivery drivers in Michigan, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of M.C.L.A. §408.414 and M.C.L.A.§408.472 by Defendants and based on Defendants' unjust enrichment.

**II.    Jurisdiction and Venue**

7.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

8.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Michigan law claims.

9.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district and a substantial part of the events giving rise to the claim herein occurred in this district.

### III.    Parties

**Plaintiff**

10.     Plaintiff Robert Schnotala resides in Muskegon, Michigan. Further, at all times material herein, Plaintiff worked within the boundaries of the Western District of Michigan.

11.     Plaintiff was an "employee" of all of the Defendants as defined in the FLSA, the M.C.L.A. §408.414 and M.C.L.A. §408.472.

12.     Plaintiff has given written consent to join this action.

**Defendants**

13.     Defendants jointly employed Plaintiff and similarly situated delivery drivers at all times relevant.

14.     Each of the Defendants had substantial control over Plaintiff and similarly situated delivery drivers' working conditions, and over the unlawful policies and practices alleged herein.

15.     Defendants were part of a single integrated enterprise.

16.     At all relevant times, the Michigan Restaurant Pizza stores shared common management and were centrally controlled and/or owned by Michigan Restaurant Group.

17.     At all relevant times, all Defendants maintained control over labor relations at the Michigan Restaurant Pizza stores.

18.     During all relevant times, Defendants permitted employees to transfer or be shared by and between the Michigan Restaurant Pizza stores without retraining.

3

19.     Defendants shared or co-determined those matters governing the essential terms and conditions of employment for Plaintiff and similarly situated delivery drivers at the Michigan Restaurant Pizza stores.

20.     Defendants suffered or permitted Plaintiff and other delivery drivers to work.

21.     Defendants had direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated delivery drivers, and also exercised that authority.

22.     During all relevant times, Defendants also exercised operational control over the delivery drivers at the Michigan Restaurant Pizza stores, including, but not limited to, control over recruiting and training of delivery drivers, compensation of delivery drivers, job duties of delivery drivers, reimbursements to delivery drivers, recruiting and training managers, design and layout of the restaurants, sales and marketing programs, public relations programs, promotional services, appearance and conduct standards, inventory, and inventory controls.

**Michigan Restaurant Group, Inc.**

23.     Defendant Michigan Restaurant Group, Inc. is a Michigan corporation with its principal place of business in Wyoming, Michigan.

24.     At all relevant times, Patrick Gaunce was a shareholder and operator of Michigan Restaurant Group, Inc.

25.     At all relevant times, Wayne Gaunce was a shareholder and operator of Michigan Restaurant Group, Inc.

26.     At all relevant times, Mark Harger was a shareholder and operator of Michigan Restaurant Group, Inc.

27.     Michigan Restaurant Group, Inc. was the corporate entity that appeared on Plaintiff's paystubs for work he completed for Defendants.

28.     At all relevant times, Michigan Restaurant Group, Inc. owned and operated multiple Papa John's restaurants in the Wyoming, Michigan and Muskegon, Michigan areas.

29.     Michigan Restaurant Group, Inc. had substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

30.     Upon information and belief, Michigan Restaurant Group, Inc. applied or caused to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

31.     Michigan Restaurant Group, Inc. had direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

32.     At all relevant times, Michigan Restaurant Group, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

33.     Michigan Restaurant Group, Inc. was an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and M.C.L.A. §408.414 and M.C.L.A. §408.472.

34.     At all relevant times, Michigan Restaurant Group, Inc. had been an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

35.     In or about June 2021, Michigan Restaurant Group, Inc. sold certain of the Michigan Restaurant Pizza stores.

**Patrick Gaunce**

36.     At all relevant times, Patrick Gaunce was a shareholder and operator of Michigan Restaurant Group.

37.     At all relevant times, Patrick Gaunce was President and Director of Michigan Restaurant Group.

38.     Patrick Gaunce is individually liable to Michigan Restaurant Group's delivery drivers under the definitions of "employer" set forth in the FLSA and M.C.L.A. §408.472 because he owned and operated Michigan Restaurant Group's stores, served as a manager of Michigan Restaurant Group, ultimately controlled significant aspects of Michigan Restaurant Group's day-to-day functions, and ultimately controlled compensation and reimbursement of employees.  29 U.S.C. § 203(d).

39.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Patrick Gaunce had financial control over the operations at each of the Michigan Restaurant Pizza stores.

40.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Patrick Gaunce had a role in significant aspects of Michigan Restaurant Group's day to day operations.

41.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Patrick Gaunce had control over Michigan Restaurant Group's pay policies.

42.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Patrick Gaunce had power over personnel and payroll decisions at the Michigan Restaurant Pizza stores, including but not limited to influence of delivery driver pay.

43.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Patrick Gaunce had the power to hire, fire, and discipline employees, including delivery drivers at Michigan Restaurant Pizza stores.

44.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Patrick Gaunce had the power to stop any illegal pay practices that harmed delivery drivers at the Michigan Restaurant Pizza stores.

45.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Patrick Gaunce had the power to transfer the assets and liabilities of Michigan Restaurant Group.

46.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Patrick Gaunce had the power to declare bankruptcy on behalf of Michigan Restaurant Group.

47.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Patrick Gaunce had the power to enter into contracts on behalf of each of the Michigan Restaurant Pizza stores.

7

48.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Patrick Gaunce had the power to close, shut down, and/or sell each of the Michigan Restaurant Pizza stores.

49.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Patrick Gaunce had authority over the overall direction of each of Michigan Restaurant Group's stores and was ultimately responsible for their operations.

50.     At all relevant times, the Michigan Restaurant Pizza stores functioned for Patrick Gaunce's profit.

51.     At all relevant times, Patrick Gaunce had influence over how the Michigan Restaurant Pizza stores can run more profitably and efficiently.

**Wayne Gaunce**

52.     At all relevant times, Wayne Gaunce was a shareholder and operator of Michigan Restaurant Group.

53.     At all relevant times, Wayne Gaunce was Treasurer and Secretary of Michigan Restaurant Group.

54.     Wayne Gaunce is individually liable to Michigan Restaurant Group's delivery drivers under the definitions of "employer" set forth in the FLSA and M.C.L.A. §408.472 because he owned and operated Michigan Restaurant Group's stores, served as a manager of Michigan Restaurant Group, ultimately controlled significant aspects of Michigan Restaurant Group's day-to-day functions, and ultimately controlled compensation and reimbursement of employees.  29 U.S.C. § 203(d).

8

55.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Wayne Gaunce had financial control over the operations at each of the Michigan Restaurant Pizza stores.

56.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Wayne Gaunce had a role in significant aspects of Michigan Restaurant Group's day to day operations.

57.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Wayne Gaunce had control over Michigan Restaurant Group's pay policies.

58.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Wayne Gaunce had power over personnel and payroll decisions at the Michigan Restaurant Pizza stores, including but not limited to influence of delivery driver pay.

59.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Wayne Gaunce had the power to hire, fire, and discipline employees, including delivery drivers at Michigan Restaurant Pizza stores.

60.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Wayne Gaunce had the power to stop any illegal pay practices that harmed delivery drivers at the Michigan Restaurant Pizza stores.

61.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Wayne Gaunce had the power to transfer the assets and liabilities of Michigan Restaurant Group.

62.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Wayne Gaunce had the power to declare bankruptcy on behalf of Michigan Restaurant Group.

63.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Wayne Gaunce had the power to enter into contracts on behalf of each of the Michigan Restaurant Pizza stores.

64.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Wayne Gaunce had the power to close, shut down, and/or sell each of the Michigan Restaurant Pizza stores.

65.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Wayne Gaunce had authority over the overall direction of each of Michigan Restaurant Group's stores and was ultimately responsible for their operations.

66.     At all relevant times, the Michigan Restaurant Pizza stores functioned for Wayne Gaunce's profit.

67.     At all relevant times, Wayne Gaunce had influence over how the Michigan Restaurant Pizza stores can run more profitably and efficiently.

**Mark Harger**

68.     At all relevant times, Mark Harger was a shareholder and operator of Michigan Restaurant Group.

69.     Mark Harger is individually liable to Michigan Restaurant Group's delivery drivers under the definitions of "employer" set forth in the FLSA and M.C.L.A. §408.472 because he owned and operated Michigan Restaurant Group's stores, served as a manager of Michigan

Restaurant Group, ultimately controlled significant aspects of Michigan Restaurant Group's day-to-day functions, and ultimately controlled compensation and reimbursement of employees.  29 U.S.C. § 203(d).

70.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Mark Harger had financial control over the operations at each of the Michigan Restaurant Pizza stores.

71.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Mark Harger had a role in significant aspects of Michigan Restaurant Group's day to day operations.

72.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Mark Harger had control over Michigan Restaurant Group's pay policies.

73.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Mark Harger had power over personnel and payroll decisions at the Michigan Restaurant Pizza stores, including but not limited to influence of delivery driver pay.

74.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Mark Harger had the power to hire, fire, and discipline employees, including delivery drivers at Michigan Restaurant Pizza stores.

75.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Mark Harger had the power to stop any illegal pay practices that harmed delivery drivers at the Michigan Restaurant Pizza stores.

76.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Mark Harger had the power to transfer the assets and liabilities of Michigan Restaurant Group.

77.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Mark Harger had the power to declare bankruptcy on behalf of Michigan Restaurant Group.

78.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Mark Harger had the power to enter into contracts on behalf of each of the Michigan Restaurant Pizza stores.

79.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Mark Harger had the power to close, shut down, and/or sell each of the Michigan Restaurant Pizza stores.

80.     At all relevant times, by virtue of his role as owner and operator of Michigan Restaurant Group, Mark Harger had authority over the overall direction of each of Michigan Restaurant Group's stores and was ultimately responsible for their operations.

81.     At all relevant times, the Michigan Restaurant Pizza stores functioned for Mark Harger's profit.

82.     At all relevant times, Mark Harger had influence over how the Michigan Restaurant Pizza stores can run more profitably and efficiently.

**Doe Corporation 1-10**

83.     Upon information and belief, Defendants owned and operated other corporate entities and/or limited liability companies that also qualify as Plaintiff's "employer" under the FLSA and Michigan law.

84.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

IV.    **Facts**

**Class-wide Factual Allegations**

85.     During all relevant times, Michigan Restaurant Group operated multiple Michigan Restaurant Pizza stores.

86.     The primary function of the Michigan Restaurant Pizza stores was to sell pizza and other food items to customers, whether they dine in, carry out, or have their food delivered.

87.     The Michigan Restaurant Pizza stores employed delivery drivers who are primarily responsible for delivering pizzas and other food items to customers' homes and workplaces.

88.     Plaintiff and the similarly situated persons Plaintiff seeks to represent are former delivery drivers employed by Defendants at the Michigan Restaurant Pizza stores.

89.     All delivery drivers employed at the Michigan Restaurant Pizza stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers.

90.     When there were no deliveries to make, Defendants' delivery drivers were required to work inside the Michigan Restaurant Pizza stores building pizza boxes, cleaning, preparing pizza and other food items, and completing other duties inside the restaurant as necessary.

13

91.     At all relevant times, Plaintiff and similarly situated delivery drivers had been paid an hourly wage rate at or close to minimum wage for the hours they worked for Defendants.

92.     Defendants required delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

93.     Defendants required delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

94.     Pursuant to such requirements, Plaintiff and other similarly situated employees purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, automobile financing, and incurred cell phone and data charges all for the primary benefit of Defendants.

95.     Defendants required delivery drivers at the Michigan Restaurant Pizza stores to provide cellphones to use while completing deliveries for Defendants.

96.     Defendants required delivery drivers to maintain and pay for operable cellphones to use in delivering Defendants' pizza and other food items.

97.     The Michigan Restaurant Pizza stores did not keep track of their delivery drivers' actual expenses.

98.     The Michigan Restaurant Pizza stores did not reimburse delivery drivers for their actual expenses.

99.     The Michigan Restaurant Pizza stores did not reimburse delivery drivers at the IRS standard business mileage rate for all of the miles they drive completing deliveries.

14

100.    At all relevant times, Plaintiff and other similarly situated delivery drivers at the Michigan Restaurant Pizza stores were reimbursed a flat per delivery amount of $2.00/delivery for the expenses they incurred.

101.    Plaintiff and similarly situated delivery drivers typically averaged 8 miles per round-trip delivery.

102.    Plaintiff and similarly situated delivery drivers typically made at least 2 deliveries per hour.

103.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

   a. 2020: 57.5 cents/mile
   b. 2021: 56 cents/mile
   c. 2022 (January through June): 58.5 cents/mile
   d. 2022 (July through December): 62.5 cents/mile
   e. 2023: 65.5 cents/mile

104.    The delivery drivers at the Michigan Restaurant Pizza stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate.

105.    The delivery drivers at Michigan Restaurant Pizza stores advance a business expense, interest free, to Defendants when they provide cars to use at work.

106.    Defendants benefit from the delivery drivers spending time off the clock repairing and maintaining their vehicles.

107.    Defendants benefit from the delivery drivers storing their vehicles when they are not being used to complete deliveries for Defendants.

108.    Defendants benefit from delivery drivers taking on the risk of using their vehicles to drive for Defendants' business.

15

109. As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Michigan law.

110. At all relevant times, Defendants applied the same pay policies, practices, and procedures to all delivery drivers at the Michigan Restaurant Pizza stores.

111. All of Defendants' delivery drivers had similar experiences to that of Plaintiff. They were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

112. Regardless of the precise amount of the per-delivery reimbursement at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

113. Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

114. Defendants have willfully failed to pay federal and Michigan state minimum wage to Plaintiff and similarly situated delivery drivers at the Michigan Restaurant Pizza stores.

115. Defendants' policy of requiring delivery drivers to provide the cars used to carry out Defendants' business unjustly enriches them at the expense of their delivery drivers.

116.     The delivery drivers at the Michigan Restaurant Pizza stores advance a business expense, interest free, to Defendants when they provide cars to use at work.

117.     Defendants reimburse their delivery drivers amounts less than they would have had to be pay if they had rented vehicles each day to use to make deliveries.

118.     Defendants reimburse their delivery drivers amounts less than they would have had to pay to own and maintain a fleet of vehicles to complete their deliveries.

119.     Defendants benefit because they do not have to employ additional individuals or expend additional time managing, monitoring, and maintaining a fleet of vehicles.

120.     Defendants benefit from the delivery drivers at the Michigan Restaurant Pizza stores spending time off the clock repairing and maintaining their vehicles.

121.     Defendants reimburse their delivery drivers amounts less than they would have had to pay to store a fleet of vehicles to complete their deliveries.

122.     Defendants benefit from delivery drivers at the Michigan Restaurant Pizza stores taking on the risk of using their vehicles to drive for Defendants' business.

123.     Defendants save substantial insurance costs and exposure to liability by requiring their judgment-proof minimum wage workers to take on the risk of accident or injury for them.

124.     Defendants benefit from not having to store the delivery drivers' vehicles when they are not in use for business purposes.

125.     Defendants are more easily able to secure loans or financing because the delivery drivers take on the substantial costs associated with providing cars needed to operate their business.

126.    Defendants need less up-front capital because the delivery drivers provide cars to make Defendants' deliveries.

127.    All of Defendants' delivery drivers conferred a benefit on Defendants by providing cellphones to use when delivering pizza and other food items for Defendants.

128.    All of Defendants' delivery drivers conferred a benefit on Defendants by providing vehicles to deliver pizza and other food items for Defendants.

**Plaintiff's Individual Factual Allegations**

129.    Plaintiff worked at Michigan Restaurant Pizza stores from approximately 2018 until June 2021.

130.    Plaintiff worked or covered shifts at Defendants' Michigan Restaurant Pizza store on E Apple Avenue, in Muskegon, Michigan, and was subject to the same compensation and reimbursement policies described herein at all of their locations.

131.    Plaintiff was paid minimum wage as an hourly rate for work performed inside the store.

132.    Plaintiff was paid a tipped credit hourly wage of $5.00 per hour while making deliveries.

133.    Plaintiff delivered pizza and other food items to Defendants' customers' homes and businesses.

134.    When he was not making deliveries, Plaintiff worked inside the restaurant, completing tasks such as checking out carryout customers, cutting pizza, folding pizza boxes, cleaning up around the store, and taking care of other general tasks for the operation of the restaurant.

135.     At all relevant times, Plaintiff received a flat per delivery reimbursement amount intended to cover his expenses.

136.     Plaintiff was reimbursed $2.00 per delivery.

137.     When Defendants began taking a tip credit from Plaintiff Schnotala's wages, they did not properly inform him of the requirements for taking a tip credit.

138.     When they began taking a tip credit from Plaintiff Schnotala's wages, Defendants failed to inform Plaintiff of the cash wage he would ostensibly receive pursuant to the tip credit.

139.     When they began taking a tip credit from Plaintiff Schnotala's wages, Defendants failed to inform Plaintiff of the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee.

140.     When they began taking a tip credit from Plaintiff Schnotala's wages, Defendants failed to inform Plaintiff that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips.

141.     When they began taking a tip credit from Plaintiff Schnotala's wages, Defendants failed to inform Plaintiff that the tip credit shall not apply to any employee who has not been informed of the tip credit requirements stated in 29 C.F.R. § 531.59(b).

142.     Alternatively, Defendants have failed to properly take a tip credit from Plaintiff Schnotala's wages because, after accounting for unreimbursed expenses, Defendants have taken more of a tip credit than they informed Plaintiff they would be taking.

19

143.   Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

144.   Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, financing, insurance, cell phone service, GPS service, and other equipment necessary for delivery drivers to complete their job duties.

145.   Plaintiff purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile financing, automobile insurance, suffered automobile depreciation, and incur cell phone and data charges all for the primary benefit of Defendants.

146.   Defendants did not track the actual expenses incurred by Plaintiff.

147.   Defendants did not reimburse Plaintiff based on his actual delivery-related expenses.

148.   Plaintiff was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

149.   During Plaintiff's employment with Defendants, Defendants failed to adequately reimburse Plaintiff for automobile and other job-related expenses.

150.   Plaintiff regularly made approximately 2 deliveries per hour during the hours he works as a delivery driver.

151.   Plaintiff regularly drove approximately 8 miles round trip per delivery.

152.   Thus, Defendants' average effective reimbursement rate for Plaintiff was approximately $.25 per mile ($2.00 per delivery / 8 average miles per delivery).

153.     In 2020, for example, the IRS business mileage reimbursement was $.575 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Thus in 2020, every mile driven on the job decreased his net wages by approximately $.325 ($.575 - $.25) per mile. Considering Plaintiff's estimate of about 8 average miles per delivery, Defendants under-reimbursed him about $2.60 per delivery ($.325 x 8 average miles).

154.     Thus, while making deliveries, Plaintiff consistently "kicked back" to Defendants approximately $5.20 per hour ($2.60 per delivery x 2 deliveries per hour).

155.     As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff minimum wage as required by law.

156.     Defendants have been unjustly enriched by Plaintiff in that he used his own vehicle and incurred vehicle-related expenses for Defendants' benefit.

157.     Defendants have been unjustly enriched by Plaintiff in that he used his own cellphone and incurred cellphone-related expenses for Defendants' benefit.

**Collective Action Allegations**

158.     Plaintiff brings the First Count on behalf of himself and all similarly situated current and former delivery drivers employed at the Michigan Restaurant Pizza stores owned, operated, and controlled by Defendants, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

159.     At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been

subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

160.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

161.    Defendants were aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked.

162.    Defendants were aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers.

163.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

164.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

165.    The FLSA Collective members are readily identifiable and ascertainable.

166.    For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and contact information are readily available from Defendants' records.

167.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

**Class Action Allegations**

168.    Plaintiff brings the Second Count under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendant at Michigan Restaurant Pizza stores in the State of Michigan between the date three years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Michigan Wage Class").

169.    Plaintiff brings the Third Count under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendant at Michigan Restaurant Pizza stores in the State of Michigan between the date six years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Michigan Unjust Enrichment Class").

170.    Excluded from Rule 23 Michigan Wage Class and Rule 23 Michigan Unjust Enrichment Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Michigan Wage Class and/or Rule 23 Michigan Unjust Enrichment Class.

171.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Michigan Wage Class member are determinable from Defendants' records.

172.    The benefits conferred by the Rule 23 Michigan Unjust Enrichment Class members and realized by Defendants are determinable from Defendants' records.

23

173.    For the purpose of notice and other purposes related to this action, the Rule 23 Michigan Wage Class and Rule 23 Michigan Unjust Enrichment Class members' names and contact information are readily available from Defendants.

174.    Notice can be provided by means permissible under Federal Rule of Civil Procedure 23 for the Rule 23 Michigan Wage Class and Rule 23 Michigan Unjust Enrichment Class.

175.    The Rule 23 Michigan Wage Class members and Rule 23 Michigan Unjust Enrichment Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

176.    There are more than 50 Rule 23 Michigan Wage Class members.

177.    There are more than 50 Rule 23 Michigan Unjust Enrichment Class members.

178.    Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member in either the Rule 23 Michigan Wage Class members and Rule 23 Michigan Unjust Enrichment Class, and the relief sought is typical of the relief which would be sought by each Rule 23 Michigan Wage Class member and each Rule 23 Michigan Unjust Enrichment Class member in separate actions.

179.    Plaintiff and the Rule 23 Michigan Wage Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage and failing to reimburse for expenses.

180.    Plaintiff and the Rule 23 Michigan Unjust Enrichment Class members have also unjustly enriched Defendants in the same way—by providing automobiles for use in their business at no cost to Defendants.

24

181.    Plaintiff and the Rule 23 Michigan Wage Class members have all sustained similar types of damages as a result of Defendants' failure to comply with M.C.L.A. §408.414 and M.C.L.A. §408.472.

182.    Plaintiff and the Rule 23 Michigan Wage Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.

183.    Plaintiff and the Rule 23 Michigan Unjust Enrichment Class sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Michigan Unjust Enrichment Class members.

184.    By seeking to represent the interests of the Rule 23 Michigan Wage Class members and Rule 23 Michigan Unjust Enrichment Class members, Plaintiff is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

185.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Michigan Wage Class and Rule 23 Michigan Unjust Enrichment Class and has no interests antagonistic to the Rule 23 Michigan Wage Class or Rule 23 Michigan Unjust Enrichment Class.

186.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

187.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to

vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

188.    Upon information and belief, Defendants and other employers throughout the state violate M.C.L.A. §408.414 and M.C.L.A. §408.472.  Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

189.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

190.    The Rule 23 Michigan Wage Class and Rule 23 Michigan Unjust Enrichment Class are properly treated as subclasses pursuant to Rule 23(c)(5).

191.    Common questions of law and fact exist as to the Rule 23 Michigan Wage Class that predominate over any questions only affecting Plaintiff and the Rule 23 Michigan Wage Class members individually and include, but are not limited to:

    a.  Whether Defendants paid Plaintiff and the Rule 23 Michigan Wage Class members at the proper minimum wage rate for all hours worked;

    b.  Whether Plaintiff and the Rule 23 Michigan Wage Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage and overtime;

    c.   Whether Plaintiff and the Rule 23 Michigan Wage Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

    d.   Whether Plaintiff and the Rule 23 Michigan Wage Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

    e.   Whether Defendants reimbursed Plaintiff and the Rule 23 Michigan Wage Class members for their actual expenses;

    f.   Whether Defendants reimbursed Plaintiff and the Rule 23 Michigan Wage Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

    g.   Whether Defendants reimbursed Plaintiff and the Rule 23 Michigan Wage Class members based on a reasonable approximation of the expenses they incurred;

    h.   Whether Defendants failed to pay Plaintiff and the Rule 23 Michigan Wage Class in a timely manner as described by MCL §408.472, and, if so, whether the wages owed are "in dispute";

    i.   Whether Defendants were unjustly enriched by Plaintiff and the Rule 23 Michigan Wage Class by having to provide and use their own vehicles for Defendants' benefit; and

    j.   The nature and extent of class-wide injury and the measure of damages for those injuries.

192.    Common questions of law and fact exist as to the Rule 23 Michigan Unjust Enrichment Class that predominate over any questions only affecting Plaintiff and the Rule 23 Michigan Unjust Enrichment Class members individually and include, but are not limited to:

    a.   Whether Plaintiff and the Rule 23 Michigan Unjust Enrichment Class members were subject to a common policy that required them to provide cars to complete deliveries for Defendants;

b. Whether Plaintiff and the Rule 23 Michigan Unjust Enrichment Class members were subject to a common automobile expense reimbursement policy;

c. Whether Plaintiff and the Rule 23 Michigan Unjust Enrichment Class members were subject to a common policy that required them to provide cellphones to use when completing deliveries for Defendants;

d. Whether Plaintiff and the Rule 23 Michigan Unjust Enrichment Class members were subject to a common cellphone expense reimbursement policy;

e. Whether Plaintiff and the Rule 23 Michigan Unjust Enrichment Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

f. Whether Defendants avoided business expenses they would have otherwise been required to cover but for Plaintiff and the Rule 23 Michigan Unjust Enrichment Class providing cars and cellphones to use to make deliveries;

g. How much it would have cost Defendants to operate their business but for Plaintiff and the Rule 23 Michigan Unjust Enrichment Class providing cars and cellphones to use to make deliveries;

h. Whether Defendants avoided storage costs, insurance, purchase costs, financing charges, risk of loss of property, employment costs relating to the overseeing and maintaining of a fleet of cars, and other costs as a result of Plaintiff and the Rule 23 Michigan Unjust Enrichment Class providing cars to use to carry out Defendants' business;

i. Whether Defendants benefited from Plaintiff and the Rule 23 Michigan Unjust Enrichment Class providing vehicles and thereby covering substantial business expenses for Defendants;

j. Whether Plaintiff and the Rule 23 Michigan Unjust Enrichment Class conferred a benefit on Defendants that Defendants were aware of;

k. Whether Defendants accepted the benefits conferred on them by Plaintiff and the Rule 23 Michigan Unjust Enrichment Class;

l. Whether it would be unjust for Defendants to retain the benefit conferred on them by Plaintiff and the Rule 23 Michigan Unjust Enrichment Class without compensating for it;

      m.  The nature and extent of class-wide injury and the measure of damages for those injuries.

193.    In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Michigan Wage Class and Rule 23 Michigan Unjust Enrichment Class, Plaintiff will request payment of a service award upon resolution of this action.

**V.    Causes of Action**

<u>**Count 1**</u>
**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

194.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

195.    Plaintiff and the FLSA Collective were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

196.    Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

197.    Defendants required Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

198.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

199.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

200. As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wage – M.C.L.A. §408.414**
**(On Behalf of Plaintiff and Rule 23 Michigan Wage Class)**

201. Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

202. Defendants paid Plaintiff and the Rule 23 Michigan Wage Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

203. The Michigan Workforce Opportunity Wage Act, M.C.L.A. §408.411, *et seq*. requires that employers be paid not less than minimum wage as determined by an inflation index ($9.65/hour in 2020 and 2021) for all hours worked.

204. Because Defendants required Plaintiff and the Rule 23 Michigan Wage Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed to pay Plaintiff and the Rule 23 Michigan Wage Class minimum wage.

205. By not paying Plaintiff and the Rule 23 Michigan Wage Class at least minimum wage for each hour worked, Defendants have violated M.C.L.A. §408.414.

206. As a result of Defendants' violations, Plaintiff and the Rule 23 Michigan Wage Class are entitled to damages, including, but not limited to unpaid wages, unreimbursed expenses, an additional one times unpaid wages/unreimbursed expenses in liquidated damages, costs, and attorney fees pursuant to MCL 408.419.

**Count 3**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Rule 23 Michigan Unjust Enrichment Class)**

207.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

208.    Plaintiff and the Rule 23 Michigan Unjust Enrichment Class have conferred a benefit upon Defendants, namely, providing and maintaining "tools of the trade" for Defendants' benefit.

209.    The "tools of the trade" include vehicles, insurance for those vehicles, and cellphones.

210.    Defendants knew that Plaintiff and the Rule 23 Michigan Unjust Enrichment Class conferred that benefit on Defendants.

211.     As described above, Defendants received benefits as a result of Plaintiff and the Rule 23 Michigan Unjust Enrichment Class providing and maintaining "tools of the trade."

212.    The benefits include, but are not limited to, direct and indirect financial benefits like increased profits and increased ability to compete on the price of Defendants' products.

213.    Defendants did not compensate or under-compensated Plaintiff and the Rule 23 Michigan Unjust Enrichment Class for these benefits.

214.    Accordingly, an inequity would result to Plaintiff and Rule 23 Michigan Unjust Enrichment Class because of the retention of this benefit by Defendants.

215.    As a result of Defendants having been unjustly enriched, Plaintiff and the Rule 23 Michigan Unjust Enrichment Class are entitled to compensation for the value of the benefit Plaintiff and the Rule 23 Michigan Unjust Enrichment Class conferred on Defendants.

**WHEREFORE**, Plaintiff Robert Schnotala prays for all of the following relief:

A.      Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.      Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.      Designation of Plaintiff as representative of the Rule 23 Michigan Wage Class members and Rule 23 Michigan Unjust Enrichment Class, and counsel of record as Class Counsel.

E.      A declaratory judgment that the practices complained of herein are unlawful under the Workplace Opportunity Wage Act, M.C.L.A. §408.411, *et seq*.

F.      An award of damages under M.C.L.A. §408.419, based on Defendants' failure to pay minimum wages, calculated as an additional one time of back wages as liquidated damages, attorneys' fees, and costs.

G.      An award of the value of the benefits for which Defendants were unjustly enriched;

H.      An award of prejudgment and post-judgment interest.

I.      An award of the value of the benefits for which Defendants were unjustly enriched on behalf of the Rule 23 Michigan Unjust Enrichment Class.

J.      An award of costs and expenses of this action, together with reasonable attorneys'

fees and expert fees.

K.      Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

/s/ Bradley K. Glazier
Bradley K. Glazier (P35523)
BOS & GLAZIER, P.L.C.
(A division of Cunningham Dalman, PC)
940 Monroe Ave NW, Suite 253
Grand Rapids, MI 49503
Telephone: (616) 458-6814
Email: brad@cunninghamdalman.com

/s/ Frank Raimond
Frank Raimond (NY Bar # 4409959)
RAIMOND & STAINES, LLC
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (212) 884-9636
Email: frank@raimondstaines.com

/s/ Allen Wong
Allen Wong (NY Bar # 4304192)
ALLEN WONG PLLC
305 Broadway, 7th Floor
New York, NY  10007
Telephone: (646) 801-8778

/s/ Andrew R. Biller
Andrew R. Biller (Ohio Bar # 0081452)
Andrew P. Kimble (Ohio Bar # 0093172)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
513-202-0710 (Phone)
614-340-4620 (Fax)
*abiller@billerkimble.com*
*akimble@billerkimble.com*

*Counsel for Plaintiff and the putative class*

33

**JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Bradley K. Glazier
Bradley K. Glazier